UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | |
| GWENDOLYN TANN, | Criminal Action No. 04-392 (CKK) |
| Defendant. | |

**MEMORANDUM OPINION**
(March 21, 2006)

Defendant, in her "Pre-Trial Statement and Proposed Voir Dire and Jury Instructions,"

offers three arguments that require resolution pending commencement of trial in this case on March

28, 2006.  Specifically, Defendant asserts that (1) the "payee" and "memorandum" section of

Defendant's personal checks are inadmissible hearsay, (2) certain checks and deposits are illegible,

and therefore should be excluded from evidence in this case, and (3) a four-page e-mail exchange

involving Plaintiff's expenditure of allegedly fraudulently obtained funds is inadmissible hearsay.

Following Defendant's assertion of these arguments, the Government filed a Reply to Defendant's

Pre-Trial Statement, Defendant entered a Supplemental Submission Regarding Admissibility of

"Payee" and "Memo" Information on Government Exhibits, and the Government submitted a Reply

to Defendant's Supplemental Submission.

Upon a searching examination of these filings, the attached exhibits at issue, the discussions

on the record, the relevant case law, and the entire record herein, the Court concludes that:  (1) the

"payee" and "memorandum" sections of the checks at issue are not hearsay, as they are either

legally operative verbal acts (if not admitted for the truth of the matter asserted) or statements of the

Defendant admissible under Federal Rule of Evidence 801(d)(2) (if admitted for the truth of the

matter asserted); (2) while certain portions of the deposit slips and checks identified by Defendant

are difficult to read, the majority of these documents are quite legible; therefore, depending on their

context and use by the Government at trial, the deposit slips and checks might well be admissible;

and (3) the four-page e-mail exchange involving Plaintiff is likewise admissible as a statement made

by Defendant pursuant to Federal Rule of Evidence 801(d)(2).

## I: BACKGROUND

Defendant Gwendolyn Tann is charged in grand jury indictment with eighteen (18) counts of

federal bank fraud in violation of 18 U.S.C. § 1344; one (1) count of federal wire fraud in violation

of 18 U.S.C. § 1343; and one (1) count of fraud in the first degree in violation of 22 D.C. Code §§

3221(a) and 3222(a)(1).  The Government alleges that Defendant's criminal conduct occurred

between 1998 and 2003, during periods when Defendant was employed for three separate employers

within the District of Columbia metropolitan area:  (1) D.C. Center for Independent Living; (2)

Utility Construction Company and Atlantic Construction Company; and (3) Generations United.

The Government contends that Defendant executed a scheme in which she executed and negotiated

checks to herself, for her own personal benefit, against various operating or payroll accounts of these

employers by forging the names of people with proper signatory authority on behalf of their

organizations.  As a result of the scheme, the Government asserts that Defendant obtained over

$70,000 in fraudulent funds.

Defendant raised three separate evidentiary issues in her Pre-Trial Statement and Proposed

Voir Dire and Jury Instructions, filed on February 7, 2006, that remain for resolution pending the

commencement of the trial in this action on Tuesday, March 28, 2006.  First, while Defendant had

originally contended that both the employer checks (i.e., the checks bearing the name of Defendant's

employers as the "payor") and Defendant's personal checks (i.e., the checks drawn from

Defendant's account with Defendant listed as the "payor") were inadmissible hearsay, *see* Def.'s

Pre-Tr. Stmt. at 10, 12, following a concession by Defendant at the status conference held on February 27, 2006, Defendant has limited her argument to contending that only the "payee" and "memorandum" sections of her personal checks are inadmissible hearsay that should be excluded pursuant to Federal Rule of Evidence 802.  *See* Def.'s Suppl. Submission re: Admissibility of "Payee" and "Memo" Information on Gov't Exs. ("Def.'s Suppl. Submission") at 1-6.  Second, Defendant argues that certain checks and deposit slips are illegible, and therefore should be excluded from evidence.  *See* Def.'s Pre-Tr. Stmt. at 10 (identifying three deposit slips and three BB&T checks written from the Atlantic Craftsman account as illegible).  Third, and finally, Defendant claims that the Government's Exhibit No. 716, a four-page e-mail exchange purportedly between Defendant and Priscilla Sanchez, General Manager of the Echo Canyon Guest Ranch where Defendant allegedly stayed as a guest, is inadmissible hearsay.  *Id*.  The Government opposes each of these arguments.  In contrast, the Government contends that the "payee" and "memorandum" sections of Defendant's personal checks, as well as her e-mail exchange, are admissible under Federal Rule of Evidence 801(d)(2) as statements of Defendant herself, *see* Gov't's Reply to Def.'s Suppl. Submission at 1-7, and asserts that the identified checks and deposit slips are legible, *see* Gov't's Reply to Def.'s Pre-Tr. Stmt. at 6 n.2.

## II: DISCUSSION

The Court, in its discussion, shall review each of the three major evidentiary disputes still before it in turn, beginning with (1) an analysis of the potential hearsay implications of the "payee" and "memorandum" portions of Defendant's personal checks, moving to (2) an examination of the legibility of the identified exhibits, and concluding with (3) an investigation into the potential hearsay implications of the four-page e-mail exchange between Plaintiff and Sanchez.

A.      *The Hearsay Implications of Defendant's Personal Checks*

While Defendant had originally objected to the admission of the employer checks and her

personal checks in their totality, Defendant conceded at the Pre-Trial Status Hearing held on

February 27, 2006 that the employer checks and certain portions of her personal checks were

admissible under the business records exception to the hearsay rule, *see* Fed. R. Evid. 803(6), or

under the theory that the checks – which, as negotiable instruments, are legally operative documents

– could constitute legally operative verbal conduct that is not hearsay, *see* Fed. R. Evid. 801(c)

advisory committee's note.  Accordingly, Defendant now admits that "[i]n this case the checks,

along with the routing numbers and teller notations, would be admissible under the verbal acts

theory to show the number and amounts of payments the bank was obligated to make."  Def.'s

Suppl. Submission at 2.  However, Defendant suggests that there is a problem in the Government

taking this analysis "one step further," where it is "not introducing the checks solely to show that the

'statements' or obligations were made," but where it is "also attempting to introduce the checks to

prove the truth of the matters asserted in the payee and memo section – that the money was paid to

the particular payee for the purpose indicated in the memo section."  *Id*. at 3.  Defendant suggests

that because (1) it does not appear that banks verify the payee or memorandum information, and (2)

since the payee and memorandum information is being offered to prove the truth of the matter

asserted, such entries fall outside of the "verbal acts" rule and must be analyzed for hearsay.  *Id*.

Defendant asserts that these statements cannot qualify as exceptions to the hearsay rule or as her

admissions because of an inability to authenticate those writings; according to Defendant, "[t]here

are a number of individuals who had access to the checks before they became part of the bank

records, including the payees.  Thus it is impossible to know who made those entries on the checks."

*Id*. at 5.

1.     How Other Courts Have Looked at This Question

In analyzing this type of argument, courts have offered a variety of reasons why checks in general, and notations thereupon (including the "payee" and "memorandum" sections), are admissible.  While the *end result* regarding the admissibility of checks and the writings on checks is quite consistent, the *reasoning* proffered by other jurisdictions has been quite inconsistent on this issue.  Indeed, many courts have offered a variety of justifications for such a finding, often concluding that these portions are admissible under numerous hearsay exceptions.  For instance, in *United States v. Marrison*, the court concluded that cashier's checks, money orders, and deposit slips – each of which contained segments allegedly filled out by the defendant – were admissible in two ways.  *See United States v. Marrison*, Crim. No. 85-225, 1986 WL 2123, at *2 (N.D.Ill. Feb. 3, 1986).  First, the court found that when checks are admitted into evidence for the limited purpose of showing that a person representing himself or herself to be the purchaser procured the checks, then the documents are not hearsay because they are not offered to prove the truth of the matter asserted, i.e., the identity of each check purchaser.  *Id.*  Second, the court also concluded that information on the checks, money orders, and deposit slips could be admitted as business records pursuant to Federal Rule of Evidence 803(6), as "the information with respect to the amount deposited and the particular account is highly reliable since it involves the internal functions of the financial institution and is verifiable by the employee carrying out the transaction." *Id.*  The court stressed that authenticity concerns such as the one raised here by Defendant could be overcome, as "a depositor has a relationship with the bank such that inaccuracies in the information reported on the deposit slip would meet with immediate correction by the employee whose responsibility it is to process the transactions." *Id.*

The tax court in *Pan American Acceptance Corporation v. Commissioner of Internal Revenue* reached a similar result through slightly different reasoning. *See* 85 T.C.M. (CCH) 1360, T.C. Memo, 1989-440, 1989 WL 94519 (U.S. Tax. Ct. Aug. 21, 1989). While the *Pan American Acceptance Corporation* court noted that certain aspects of the check in question could be considered an admission pursuant to Federal Rule of Evidence 801(d)(2) or business records within the purview of Rule 803(6), the court ultimately determined that the check reflected the respondent's intent, and was therefore admissible under Federal Rule of Evidence 803(3) as the declarant's then existing intent, plan, or design. *Id.* In contrast, the tax court in *Spurlock v. Commissioner of Internal Revenue* concluded that the copies of the checks in question – and respondent's writings and notations on those checks – could be admitted as a combination of (1) verbal, legally operative acts, and therefore not hearsay; (2) the fact that these writings are "a statement of which the party has manifested an adoption or belief in its truth," *see* Fed. R. Evid. 801(d)(2)(B), and therefore not hearsay; and (3) the fact that the notations and writings were statements in documents affecting an interest in property, and thereby admissible as an exception to the hearsay rule pursuant to Federal Rule of Evidence 803(15). *See* 85 T.C.M. (CCH) 1236, T.C. Memo. 2003-124, 2003 WL 1987156 (U.S. Tax. Ct. Apr. 23, 2003); *see also United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004) (admitting checks and writings thereupon under theory that they are "verbal acts" outside of the purview of the hearsay rule).

      2.    <u>Analysis</u>

While these decisions are certainly persuasive, and might well describe plausible alternative bases upon which to justify the choice to admit personal or employer checks, and all writings thereupon, into evidence, the Court is convinced that the following analysis permitting the

admissibility of both the "payee" and "memorandum" sections of Defendant's checks reaches the end result in the most logical manner possible.

i.      *The "Payee" Section of the Employer Checks and Defendant's Personal Checks*

Here, the Government contends that the "payee" sections on each of the checks are not hearsay because these sections encompass verbal, legally operative acts.  The Federal Rules of Evidence define "hearsay" as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  The Advisory Committee Notes (1972 Proposed Rules) provide a gloss on this rule, indicating that the definition of "hearsay" does not include "verbal acts."  In relevant part, the Advisory Committee explains:

> If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay. The effect is to exclude from hearsay the entire category of "verbal acts" and "verbal parts of an act," in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conducting affecting their rights.

Fed. R. Evid. 801(c) advisory committee's note (citation omitted).  A "verbal act" is

> an utterance of an operative fact that gives rise to legal consequences.  Verbal acts, also known as verbal statements, are not hearsay because the statement is admitted merely to show that it was actually made, not to prove the truth of what was asserted. For example, the hearsay rule does not exclude relevant evidence as to what the contracting parties said or wrote with respect to the making or terms of an agreement.

5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 801.11[3] (2d ed. 2005); *see also United States v. Stover*, 329 F.3d 859, 870 (D.C. Cir. 2003) (same).

While Defendant concedes that the checks in question, along with their routing marks and teller notations, would be admissible under the verbal acts theory to show the number and amounts of payment that the bank was obligated to make, *see* Def.'s Suppl. Submission at 2, Defendant

draws a line between the payee line information and the remaining portion of the checks affecting

the legal rights and liabilities of the parties, *see id*. at 3.  Defendant contends that the use of the

"verbal acts" theory, as applied to the "payee" section, is particularly inappropriate because (1) it

appears that the Government is seeking to prove the truth of the matter asserted, i.e., the identity of

the "payee," which appears to be outside of the bounds considered by the rule, and (2) there are

issues concerning the truth, accuracy, and reliability of the "payee" information.  *Id.*

  Multiple problems exist with respect to Defendant's argument in the context of the reliability

of the "payee" section.  First, despite Defendant's claims regarding the accuracy and reliability of

the "payee" section, as a negotiable instrument, a check is a species of commercial paper, and is

therefore self-authenticating pursuant to Federal Rule of Evidence 902(9), which provides:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not
> required with respect to the following:
>
> *  *  *  *  *  *  *  *  *  *  *
>
> (9) Commercial paper and related documents.  Commercial paper, signatures
> thereon, and documents related thereto to the extent provided by general commercial
> law.

Fed. R. Evid. 902(9).  As such, numerous courts have held that the Government need not jump

through multiple hoops to authenticate information on a check prior to admitting the check into

evidence as an exhibit for the jury's consideration.  *See, e.g.*, *Pang*, 362 F.3d at 1192 (checks);

*United States v. Hawkins*, 905 F.2d 1489, 1494 (11th Cir. 1990) (checks); *United States v. Little*,

567 F.2d 346, 349 n.1 (8th Cir. 1977) (checks); *United States v. Carriger*, 592 F.2d 312, 316 (6th

Cir. 1979) (promissory notes).

  Second, Defendant's claims of "reliability" issues with the "payee" section is a red herring.

Plaintiff, as an account holder, would receive a monthly statement from her bank(s) detailing the

deposits and withdrawals on her account(s), including an enumeration of which checks were issued
to whom and in what amount for each month.  Here, there is no evidence in the obtained bank
records that Defendant ever contested the payee information on her checks even though she received
bank statements indicating that funds were transferred from her account, and – to date – Defendant
has not proffered that any such fraud occurred.  Given that an ordinary account holder in the normal
course of business would immediately notify his or her bank of such inaccuracies, which would then
be immediately corrected, Plaintiff's failure to take this step indicates that no reliability issues are
present. *See Marrison*, 1986 WL 2123, at *2.

Third, and perhaps most importantly, Defendant's attempt to draw a line between the
"payee" line information and the other portions of the check, such as the bank name, check number,
account, routing numbers, and teller notations, is spurious.  Rather, the "payee" line is the key line
affecting the rights of all parties to the commercial paper; without a named payee, a check would
affect no legal rights or liabilities.  Indeed, with an incorrectly named payee, no deposit could be
made by the party receiving the funds at its bank, and no corresponding withdrawal from
Defendant's accounts could have occurred.  Here, the checks at issue are contracts indebting the
payor to the payee; they give rise to legal consequence by virtue of the laws regarding commercial
paper.  When, as the Government alleges, Defendant fraudulently wrote checks to herself by forging
the signatures of her supervisors at her three employers, Defendant affected her legal rights (because
she was by action of commercial law given access to funds that were previously not hers), the legal
rights of her employer (which by action of the law on commercial paper had its bank accounts
reduced by the value of the check), and her employer's bank (which was on the hook by action of
commercial law for cashing a fraudulent check).  Similarly, when Defendant wrote a check from her
own account, she affected her legal rights, the rights of the bank on which she was drawing funds,

and the rights of the person or entity receiving the check.

Accordingly, it would appear that the "payee" section, similar to the bank name, account number, account name, check number, routing numbers, and teller notations, is legally operative verbal conduct that is not hearsay and – because it is self-authenticating – is properly admissible in Defendant's trial. *See Pang*, 362 F.3d at 1192 (citing *United States v. Dababneh*, 28 M.J. 929, 935 (N.M.C.M.R. 1989) ("Checks themselves, together with the tellers' markings and routing stamps, . . . are commercial events which create legal rights and obligations, and therefore no exception to hearsay need be found to admit checks into evidence]".)). However, a key distinction must be made. "Verbal acts," by their very nature, may not be asserted for the truth of the matter asserted; rather, they are not hearsay as long as "the significance of an offered statement lies solely in the fact that it was made." Fed. R. Evid. 801(c) advisory committee's note; *see also Marrinson*, 1986 WL 2123, at *2 (noting that the checks involved were not hearsay because they were not offered to prove the truth of the matter asserted, i.e., the identity of each check purchaser).

Here, the Government has announced that it "can argue the inference that the existence of a check – a commercially binding contractual document obligating a payor institution to make a payment to a named payee – tends to show that such a payment was made." Gov't's Reply to Def.'s Suppl. Submission at 6-7. With respect to both the employer checks, drafted to the order of Defendant, and Defendant's own personal checks, the Government contends that it will not run afoul of the "truth of the matter asserted" provision as long as it is "admitting the check and payee line to show that [] defendant debiting her account and crediting the payee account." *Id*. at 7. Unfortunately, the Government's analysis – and its attempt to tread a fine line between arguing from inference and arguing about the truth of the matter asserted – breaks down at this point. With respect to the employer checks made out to the order of Defendant, the Government's "verbal acts"

theory remains persuasive.  The "payee" section on the employer checks (i.e., Plaintiff) is a legally operative verbal act that is not being offered for the truth of the matter asserted on the face of the document:  the Government is not introducing the checks to show that Defendant's employers' actually intended to pay Defendant certain sums, and that money was transferred from the employers' accounts to Defendant's accounts pursuant to the instructions of the authorized signor. Rather, the Government is introducing the employer checks for a separate purpose not apparent on their face:  the Government is using the employer checks to show that the information contained on the face of the document is actually false – i.e., the employers did not intend and did not authorize payment at that time, in that amount, and in that form to Defendant.  It has long been held that "[s]tatements which are introduced solely for the purpose of proving that they were made as a predicate for later proof that they were false are not hearsay."  *United States v. Moore*, 748 F.2d 246, 248-49 (5th Cir. 1984) (citing *Anderson v. United States*, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974)); *see also United States v. Perholtz*, 842 F.2d 343, 361 (D.C. Cir. 1988) (citing *Anderson*, 417 U.S. at 220 & n.9, 94 S.Ct. 2253) (introduction of the "script" used by the scheme was not permissible, as the purpose was to show that the information in the document was false);*United States v. Bruner*, 657 F.2d 1278, 1284-85 (D.C. Cir. 1981) (introduction of prescriptions was permissible, as the prescriptions were not offered to prove the truth of the assertions that they contained, such as the fact that the doctor believed that the patient needed the drug prescribed, but instead were offered to show that they were used to obtain illegal drugs).  As such, because the "payee" section and the employer checks in general are not being offered to prove the truth of the matter asserted, the employer checks made to the order of Plaintiff are admissible as non-hearsay pursuant to the legally operative "verbal acts" exemption discussed in Federal Rule of Evidence 801(c).

However, the same analysis does not hold true with respect to the checks written from Defendant's personal bank account to other entities, such as Catholic University, Victoria's Secret, or the Echo Canyon Guest Ranch.  With respect to Defendant's personal checks, the Government appears to be making an argument that the "payee" section on these checks is not being offered for the truth of the matter asserted, but is instead being offered to provide context – in conjunction with various bank statements – that tends to show that the payment described was indeed made.  Such an argument steps over the line set forth under the "verbal acts" doctrine.  As the D.C. Circuit emphasized in *United States v. Stover*, 329 F.3d 859 (D.C. Cir. 2003), "that a statement provides context to other evidence does not mean that the statement is not hearsay." *Id.* at 870.  Indeed, "[a]ll relevant evidence provides context to the events underlying the charged crime." *Id.* (citing *United States v. Bowie*, 232 F.3d 923, 928-29 (D.C. Cir. 2000)).  However, the central "question is whether the statement is offered for its truth." *Id.* (citing Fed. R. Evid. 801(c); *United States v. Jordan*, 810 F.2d 262, 264 (D.C. Cir. 1987)).  While the Government essentially obfuscates its true intentions, the Government is essentially seeking to introduce the "payee" section of Defendant's personal checks for the truth of the matter asserted.  When the Defendant's personal checks list "Catholic University" as the "payee," the Government wants the jury to glean that the document is accurate on its face – i.e., Defendant intended to pay Catholic University for some service, specifically listed Catholic University as the payee, and the subsequent payment was made.  In contrast to the employer checks written to Defendant as the "payee," where the Government is not asserting that the documents are valid and accurate, this out-of-court statement on Defendant's personal checks (the listing of the "payee" in Defendant's personal checks) is being offered for the truth of the matter asserted.  *See id.* (concluding that the statement in question was not probative unless it was being offered for the truth of the matter asserted, and was therefore hearsay).  Because

12

the "payee" sections of Defendant's personal checks are being offered for the truth of the matter asserted, they fall outside of the "verbal acts" doctrine and must come into evidence – if they are admissible – under a separate exemption or exception. *See Stuart v. Unum Life Ins. Co. of Am.*, 217 F.3d 1145, 1154 (9th Cir. 2000) (limiting the "verbal acts" doctrine to statements where the truth of the matter is not asserted).

      ii.    *The "Memorandum" Section and "Payee" Section of Defendant's Personal Checks*

Given that the "payee" section of the employer checks is admissible under the legally operative "verbal acts" doctrine, the Court must still resolve the two issues remaining with respect to the checks in this case – (1) the "payee" section of Defendant's personal checks; and (2) the "memorandum" section of Defendant's personal checks.  Upon reflection, the Court concludes that neither the "payee" or the "memorandum" sections of Defendant's checks are hearsay; instead, each section is admissible as it is "offered against a party and is . . . the party's own statement" and "a statement of which the party [i.e., the Defendant] has manifested an adoption or belief in its truth." *See* Fed. R. Evid. 801(d)(2)(A) & (B).  Once again, Defendant seeks to escape this conclusion by suggesting that the statements in the "payee" and "memorandum" sections of her personal checks are "not sufficiently linked to her." Def.'s Suppl. Submission at 5.[1]  Defendant asserts that because

---

    [1] For instance, Defendant cites *United States v. Mitchell*, 49 F.3d 769 (D.C. Cir. 1995), for the proposition that when records "contain information obtained from a customer, thus constituting hearsay within hearsay, the information will come within the business records exception only 'if it is shown that [the business's] standard practice was to verify the information provided by [the] customer." *Id.* at 778 (quoting *United States v. Patrick*, 959 F.2d 991, 1001 (D.C. Cir. 1992)). The *Mitchell* decision is inapplicable in this case for two reasons.  First, the checks at issue in this case are being admitted as legally operative "verbal acts" or as admissions, not as business records. Second, the facts of *Mitchell* show that the identity of the sender and receiver of money through Western Union was quite dubious, given the relatively minimal identity verification procedures employed by Western Union. *See id.* at 777-78.  In contrast, there is a great deal of direct and circumstantial evidence in this case confirming that Defendant was the individual who drafted these

a number of individuals may have obtained access to the checks before the check entered the records

of the bank, it is impossible to know who made the "payee" and "memorandum" entries on the

checks.  *Id.*  Defendant's contention is without merit.

Simply, Defendant is requiring that the Government meet a level of proof regarding

admissibility not contemplated by the Federal Rules of Evidence.  Rather than the extremely high

burden of proof for admission contemplated by Plaintiff, the Federal Rules of Evidence simply

provide that the Court is to make a threshold determination.  First, the Court must determine the

possible admissibility of the evidence by looking to its relevance prior to any consideration of the

rules of evidence.  Federal Rule of Evidence 104(b) provides:

> Preliminary questions concerning the qualification of a person to be a witness, the
> existence of a privilege, or the admissibility of evidence shall be determined by the
> court, subject to the provisions of subdivision (b).  In making its determination it is
> not bound by the rules of evidence except those with respect to privileges.

Fed. R. Evid. 104(b).  Second, the Court must determine whether a reasonable juror may find that

the matter in question is what the Government claims – i.e., could a reasonable juror find that the

"payee" and "memorandum" sections on Defendant's checks are statements of Defendant?  *See* Fed.

R. Evid. 104(b) advisory committee's note ("The judge makes a preliminary determination whether

the foundation evidence is sufficient to support a finding of fulfillment of the condition.").

Here, there is ample evidence for the Court to make a preliminary determination that

Defendant authored the "payee" and  "memorandum" section of the personal checks in question.

Importantly, the bank statements conceded by Defendant as admissible demonstrate that the

accounts from which the checks were written were controlled by Defendant, that Defendant received

deposits from her employers, and that the check transactions resulted in debits to Defendant's

———————————————

personal checks from her account.

accounts.  Moreover, checks written from the bank accounts in Defendant's name, checks signed in

Defendant's name, and checks issued from bank accounts where checks are deposited from

Defendant's employers, provide sufficient evidence to conclude that Defendant authored both the

checks and the "payee"/ "memorandum" portions of the documents.  Indeed, as noted previously,

there is no evidence that Defendant ever contested the "payee" or "memorandum" information on

her checks (which are typically returned to the account holder after they are cashed by the recipient)

or in her bank statements.

In addition to these factors, the Government has proffered that it has other evidence linking

the "payee" and "memorandum" section of the checks in question to Defendant.  *See* Gov't's Reply

to Def.'s Suppl. Submission at 3.  For instance, the Government plans to submit into evidence

Government's Exhibit 716, an e-mail chain in Defendant's name planning a trip to Echo Canyon

Guest Ranch.  This e-mail, written from Defendant's work, ties into a check, Government's Exhibit

407.56, written to Echo Canyon Guest Ranch to pay for Defendant's trip, and a bank statement,

Government's Exhibit 410.93, recording the check payment by Defendant to Echo Canyon Guest

Ranch.  The Government also contends that "[i]n addition to external consistencies, the checks are

internally consistent:  where a check contains memo line writing, the memo line matches the payee

line which, in turn, matches the information listed in the bank statement."  *Id*. at 3-4.  The

Government points out these internally consistent examples: (1) Exhibit 403.266, a check with

"Catholic University" (where Defendant, on her resumé, listed that she was a student) as the payee,

lists on the memorandum line "Summer Tuition"; (2) Exhibit 403.258, a check with "Victoria's

Secret" as the payee, lists "Black Peasant Dress [and] Brown Peasant Dress" in the memorandum

line; and (3) Exhibit 407.071, a check with "Catholic University" as the payee, lists "Law School

Application Fee" on the memorandum line.  *Id*. at 5.

Ultimately, Federal Rule of Evidence 901(b)(4) provides that a writing may be authenticated based on its "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances."  As the Supreme Court stressed in *Bourjaily v. United States*, 484 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), "[t]he sum of an evidentiary presentation may well be greater than its constituent parts.  Taken together, these two propositions demonstrate that a piece of evidence, unreliable in isolation, may become quite probative when corroborated by other evidence."  *Id.* at 180, 107 S.Ct. 2775.  Such is the case here.  When considering Defendant's checks, and the "payee" and "memorandum" sections contained therein, it is clear that a reasonable juror could find that the checks and writings contained therein are what the Government claims them to be:  the checks in question match up to Defendant's bank statements, and the checks with the "payee" and "memorandum" information correspond to check information on the bank statements and provide a mutually reinforcing authenticating mechanism.  Indeed, as the D.C. Circuit stressed in *United States v. Sutton*, 426 F.2d 1202 (D.C. Cir. 1969), "[t]he applicable test [] is not whether the evidence of genuiness induces a belief beyond a reasonable doubt that the document is the handiwork of its alleged drafter, but whether, if it is uncontradicted, a reasonable mind might – though not necessarily would – fairly conclude favorably to the fact of authorship." *Id.* at 1207.  While Defendant is free to speculate that some unknown individual with some unknown motive might have tampered with the "payee" and "memorandum" lines of checks issued in Defendant's name, signed in Defendant's name, and corresponding to Defendant's bank accounts, such speculation is simply not a basis for removing – as a threshold issue – the matter from the consideration of the jury.  In this case, the evidence is sufficient that a reasonable juror could attribute the "payee" and "memorandum" sections of the personal checks in question to Defendant herself; as such, the "payee" and "memorandum" sections would constitute Defendant's own

statements and, pursuant to Federal Rule of Evidence 801(d)(2), would fall outside of the purview of hearsay.[2]

     B.     *The "Illegibility" of Certain Checks and Deposit Slips*

Defendant contends that three deposit slips – Government's Exhibits 204.495, 204.495-96, and 208.533-34 – and three checks – Government's Exhibits 913, 914, and 915 – are illegible and therefore should be excluded. *See* Def.'s Pre-Tr. Stmt. at 10. In contrast, the Government contends that the documents are legible, *see* Gov't's Reply to Def.'s Pre-Tr. Stmt. at 6 n.2, and, following the March 13, 2006 status hearing in this case, provided to the Court copies of the specific exhibits at issue so that the Court would have all available information upon which to make an adequate ruling regarding (il)legibility.

While the precise nature of Defendant's argument is a bit unclear, the Court – upon an examination of the exhibits in question – concludes that while portions of the documents are difficult to discern at times, the documents themselves are not illegible and, taking into account other parole evidence that may reinforce their contents, are certainly relevant and readable. For instance, the Court can glean upon a plain reading of these documents:

- Government's Exhibit 913: This is a check of $534.00 written to the order of Defendant from an account held by Atlantic Craftsman, Inc., at BB&T Bank, and is apparently signed by Kenneth C. Swecker. The check is numbered "001137" and, on its back, contains several bank routing numbers and a scrawled signature. The signature itself is "illegible" in the sense that it consists of cursive loops and scrawl that does not clearly identify the signor.

- Government's Exhibit 914: This is a check of $833.48 written to the order of Defendant from an account held by Atlantic Craftsman, Inc., at BB&T Bank, and is apparently signed by Kenneth C. Swecker. The check is numbered "001145" and,

---

[2] However, the Court certainly encourages, but does not require, that the Government present additional witnesses and/or evidence as support for the admission of the "payee" lines as verified items pursuant to the business records exception.

on its back, contains several bank routing numbers and a scrawled signature that
appears similar to the signature on Government's Exhibit 913.

- <u>Government's Exhibit 915</u>: This is a check of $768.40 (though the cent portion is a
bit unclear) written to the order of Defendant from an account held by Atlantic
Craftsman, Inc., at BB&T Bank, and is apparently signed again by Kenneth C.
Swecker.  This check is numbered "001146" and, on its back (which is easier to read
than the backs of the previous two checks), contains several bank routing numbers
and a similar scrawled signature.

- <u>Government's Exhibit 204.495-96</u>: The first page of this two-page exhibit is a check
for $250.00 issued by the D.C. Center for Independent Living, Inc., from an account
with First Union National Bank apparently signed by Jody W. Wildy, to pay to the
order of Defendant.  The check is dated January 11, 1999, and is numbered "8911."
Also on the first page of this exhibit is a copy of a deposit slip to Plaintiff's account
at Crestar Bank.  Although the date on the deposit slip is difficult to read, the amount
is clearly $250.00.  The second page of the exhibit contains the backs of these two
documents, with the relevant bank routing numbers.  The back of the check shows a
scrawled signature similar to the previous signatures.

- <u>Government's Exhibit 204.533-34</u>: The first page of this two-page exhibit is a check
for $350.00 issued by the D.C. Center for Independent Living, Inc., from an account
with First Union National Bank apparently signed by Jody W. Wildy, to pay to the
order of Defendant.  The check is dated April 19, 1999, and is numbered "9098."
Also on the first page of this exhibit is a copy of a deposit slip to Plaintiff's account a
Crestar Bank.  Once again, although the date on the deposit slip is difficult to read,
the amount deposited is clearly $350.00.  The second page of the exhibit contains the
backs of these two documents.  The bank routing numbers are quite difficult to see,
although the back of the check once again shows a somewhat similar scrawled
signature.

Upon an analysis of the documents in question, the Court concludes that the documents – as

a whole – are legible, and relevant information can certainly be gleaned from them.  While not every

portion of every document is clear, a majority of each document is certainly quite legible, and either

party certainly may use extrinsic, parole evidence to provide further context for these documents or

to attempt to discredit them.  Given the nature of this case, and the passage of time since Defendant

allegedly commenced her scheme, the Court concludes that the documents identified by Defendant

are sufficiently legible that they may be properly introduced as evidence in her trial.

C.      *The Four-Page E-Mail Between Plaintiff and Sanchez*

Finally, with little argument or explanation, Defendant contends that Government's Exhibit

716, a four-page e-mail correspondence between Defendant and Priscilla Sanchez, General Manager

of Echo Canyon Guest Ranch, dated March 13, 2003, should be excluded as inadmissible hearsay.

*See* Def.'s Pre-Tr. Stmt. at 10.  In response, the Government notes that "[t]he email chain is in the

name of Gwendolyn Tann, the government expects testimony that it was recovered from Ms. Tann's

workstation computer[,] and the statements in the email are corroborated by Ms. Tann's bank

account."  Gov't's Reply to Def.'s Pre-Tr. Stmt. at 6 n.2.

For reasons similar to those set forth in Section II(A)(2)(ii), *supra*, the Court concludes that

the Government has met its burden under Federal Rule of Evidence 104(b) to establish that a

reasonable juror could conclude that the e-mails in question were statements by Defendant, and

therefore exempt from a hearsay analysis pursuant to Federal Rule of Evidence 801(d)(2).  The e-

mail chain shows that these e-mails emanate from an account in Defendant's name at "gu.org" in

March 2003.  Given that Defendant was employed by Generations United ("GU") at that time, and

Generations United is a non-profit entity (meaning that any e-mail address would end in ".org"

rather than ".com"), the e-mail address of "gtann@gu.org" appears logically to be connected to

Defendant.  Given the additional evidence in Defendant's checks and bank statements tying her to

Echo Canyon Guest Ranch, the Government has more than met its burden to show that (1) the e-

mail is relevant, and (2) the e-mail constitutes Defendant's statements, and is therefore not

excludable hearsay.  As such, to the extent that Defendant seeks to have Government's Exhibit 716

withheld from the jury's consideration as hearsay, the Court shall deny Defendant's request at this

time based on the record before it..

### III: CONCLUSION

For the reasons set forth above, the Court concludes that: (1) the "payee" and "memorandum" sections of the checks in question are not hearsay, as they are either legally operative verbal acts (if not admitted for the truth of the matter asserted) or statements of the Defendant admissible under Federal Rule of Evidence 801(d)(2) (if admitted for the truth of the matter asserted); (2) while certain portions of the deposit slips and checks identified by Defendant are difficult to read, the majority of these documents are quite legible; therefore, depending on their context and use by the Government at trial, the deposit slips and checks might well be admissible; and (3) the four-page e-mail exchange involving Plaintiff is likewise admissible as a statement made by Defendant pursuant to Federal Rule of Evidence 801(d)(2). Accordingly, the Court shall deny Defendant's motion to exclude evidence contained within her Pre-Trial Statement and her Supplemental Submission.


Date:   March 21, 2006

_____/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge
