UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

GWENDOLYN TANN,                                    Criminal Action No. 04-392 (CKK)

    Defendant.

MEMORANDUM OPINION
(May 12, 2006)

Currently before the Court is Defendant Gwendolyn Tann's Motion to Set Bond Conditions

Pending Sentencing, pursuant to which Defendant seeks a release from detention pending sentencing

"so that she can get her personal affairs in order before serving whatever sentence is imposed in the

case" and so that she may be able to attend her May 13, 2006 graduation ceremony from the

University of Maryland University College ("UMUC"), wherein she will be awarded a Masters

Degree in International Management.  *See* Def.'s Mot. to Set Bond Conditions at 2, 4-5.  Upon a

searching examination of Defendant's motion, Defendant's concurrent Request for a Hearing on

Bond Motion, the Government's Opposition, Defendant's Reply, the relevant factors under 18

U.S.C. § 3143(a), and the entire record herein, the Court shall deny Defendant's Motion to Set Bond

Conditions Pending Sentencing and Plaintiff's Request for a Hearing on Bond Motion.

**I: BACKGROUND**

On August 31, 2004, Defendant was charged in grand jury indictment with eighteen (18)

counts of federal bank fraud in violation of 18 U.S.C. § 1344; one (1) count of federal wire fraud in

violation of 18 U.S.C. § 1343; and one (1) count of fraud in the first degree in violation of 22 D.C.

Code §§ 3221(a) and 3222(a)(1).  The indictment alleged that Defendant's criminal conduct

occurred between 1998 and 2003, during periods in which Defendant was employed for three

separate employers within the District of Columbia metropolitan area:  (1) D.C. Center for

Independent Living; (2) Utility Construction Company and Atlantic Construction Company; and (3)

Generations United.  According to the indictment, Defendant executed a scheme in which she

executed and negotiated checks to herself, for her own personal benefit, against various operating or

payroll accounts of these employers by forging the names of people with proper signatory authority

on behalf of their organizations.  As a result of the scheme, Defendant allegedly obtained over

$70,000 in fraudulent funds.

Following a four day jury trial which began on March 28, 2006 and ended on March 31,

2006, Defendant was convicted by the jury on all twenty counts contained within the indictment.

Following the guilty verdict, the Government moved to have Defendant detained pursuant to 18

U.S.C. § 3143(a).  In support of its motion, the Government noted that Defendant had been

convicted of a wide-ranging scheme to defraud three different employers over a five-year period; that

Defendant had exploited her expertise as a bookkeeper and her positions of trust to accomplish her

scheme; and that she had used her résumé – which contained false information and exaggerated

accomplishments – as a tool to further her scheme by hiding from prospective employers information

about entities she had previously defrauded.   *See* 3/31/06 Tr.  With respect to the danger Defendant

posed to the community if released pending sentencing, the Government argued that, in the years

following those at issue in the indictment, Defendant continued to hide her prior fraudulent schemes

from other prospective employers.  For example, the Government submitted for review two résumés

found in the files of Worldwide Network Services, LLC ("WNS"), a Washington, D.C. company

with whom Defendant worked in 2004.  The first résumé, *see* Gov't's Opp'n, Ex. 1 (First Defendant

Résumé Held by WNS), omits any mention of Defendant's employment at Utility Construction

Company or Generations United – two of the companies that she was convicted of defrauding.

Moreover, it represents that Defendant is

> [c]urrently enrolled at Columbus School of Law-Catholic University of
> America–(Dual Degree Program) JD (concentration in Contractual Law-anticipated
> receiving December 2004) and MS in International Management (concentration
> Human Resource Management) completed May, 2004.

*Id*. The second résumé held by WNS adopts a functional or skill-set approach, rather than a job-by-

job chronological recitation, so that Defendant could avoid specifying any prior employers. *Id*., Ex.

2 (Second Defendant Résumé Held by WNS). On this second résumé, Defendant represented:

> Presently I have a [sic] MS in International Management and BA in Business
> Administration and am completing the Jurist [sic] Doctrine [sic] program at CUA.

*Id*.[1] In response to the Court's inquiry on March 31, 2006, Defendant – through her counsel –

represented that she was not a law student, and did not know how the erroneous references to her

matriculation at law school ended up on her various résumés. *See* 3/31/06 Tr.

---

[1] While not considered by the Court on March 31, 2006, the Government re-reviewed the paperwork it received from WNS in responding to Plaintiff's motion and discovered a third version of Plaintiff's résumé at WNS, in which she represented: "Presently I have a BA in Business Administration and am completing a JD degree in contract law with a minor in public policy." *See* Gov't's Opp'n, Ex. 3 (Third Defendant Résumé Held by WNS). This résumé, like the second résumé, does not list specific employers. *Id*.

After considering the nature of Defendant's offenses, her current employment and potential access to checks and/or money, the flight risk of Defendant, and the danger that she posed to the safety of the community, the Court revoked Defendant's bond in an oral ruling on March 31, 2006, and invited counsel for Defendant to file a bond motion if appropriate. *Id*. The Court stressed, in its determination, that (1) Defendant posed a significant danger to the economic safety of the community, and (2) Defendant had failed to show by clear and convincing evidence that she was neither a flight risk nor a risk to a person or the community. *Id*. On May 1, 2006, Defendant took up the Court's offer and filed a Motion to Set Bond Conditions. In support of her motion, Defendant offers eight central arguments: (1) she has no prior convictions, *see* Def.'s Mot. to Set Bond Conditions at 3; (2) she has complied with the conditions set by the Pretrial Services Agency, *id*.; (3) she has appeared for all prior court appearances and even appeared for trial despite being advised "that she was likely to be convicted," *id*.; (4) the Government found "discrepancies" on only two résumés and apparently found no other misconduct on her part since 2003, *id*.; (5) she is willing to forgo employment pending sentencing, *id*. at 4; (6) she needs to put her affairs in order and has no one else to help her, *id*.; (7) she desires to attend graduation ceremonies for a Master Degree that she is purportedly eligible to receive from UMUC on May 13, 2006, *id*.; and (8) she has been unable to have visits with her therapist since being incarcerated, *id*. at 5. On May 6, 2006, Defendant filed a Request for a Hearing on her Bond Motion, restating her contention that she will not pose a danger to the community or pose a flight risk, and reaffirming her wish to attend the May 13, 2006 graduation ceremony given that she "put a lot of hard work into her studies." Def.'s Req. for Hrg. on Bond Mot. at 1.

Following the receipt of Defendant's motion and her contemporaneous request for a bond

hearing, this Court issued a paperless Minute Order on May 2, 2006, which gave the Government

until May 10, 2006 to file a response to Defendant's request.  *See United States v. Tann*, Crim. No.

04-392 (D.D.C. May 2, 2006) (minute order setting out briefing schedule).  The Government

subsequently filed an Opposition to Defendant's Motion to Set Bond Conditions on May 10, 2006,

wherein it announced two new factual discoveries.  First, the Government contacted Defendant's

employer at the time of trial, Z-Tech Corporation, which is located at 1803 Research Boulevard,

Suite 301, in Rockville, Maryland.  Z-Tech's Human Resouces Manager, Shannon Twamley,

reported to the Government that Defendant had informed her that she would not be able to attend

work during the week of March 27, 2006 because she had jury duty.  *See* Gov't's Opp'n at 3-4.

According to Ms. Twamley, Defendant never informed Z-Tech that she was the subject of a criminal

trial, and never informed Z-Tech of her status post-trial; when Defendant failed to return to work,

Ms. Twamley actually contacted the police to determine Defendant's whereabouts out of concern for

her safety.  *Id*. at 4.

        Second, Ms. Twamley also provided the Government with a résumé that Defendant had

posted on the online website Monster.com – the online site that Ms. Twamley had logged on to find

and hire Defendant.  *Id*. & Ex. 4 (Fourth Plaintiff Résumé).  This résumé, which was posted on the

Internet by Defendant on November 29, 2005, is notable in at least two respects:  (1) it represents

once again that Defendant is "[c]urrently enrolled in Columbus School of Law (JD Public Policy

Program)," *id*.; and (2) it provides a wildly exaggerated description of Plaintiff's duties while she

was an employee of the D.C. Center for Independent Living which bear little resemblance to her

actual responsibilities as an Administrative Assistant to the D.C. Center for Independent Living, as

described in the trial testimony of former Executive Director Jody Wildy (which the jury obviously

credited), *id*.

Defendant, in her Reply filed on May 11, 2006, does not contest these discrepancies in her post-2003 résumés, nor does she contest the fact that she is not enrolled in the Columbus School of Law. *See generally* Def.'s Reply. In contrast, she stresses that she "has had a very difficult life," and emphasizes the importance that participation in the May 13, 2006 graduation ceremony holds for her. *Id.* at 2. Moreover, she "submits that it is more significant that there is no evidence that she used these alleged representations to fraudulently obtain checks or monies from any employer since 2003." *Id.* at 3. Finally, Defendant argues that she is not a flight risk, given that (1) there is no mandatory prison time for her offenses; (2) the Advisory Guidelines suggest a relatively low sentence; (3) she has no prior criminal record; and (4) she has a substantial record of appearance and compliance in this case. *Id.* at 2 n.2.

## II: DISCUSSION

When considering a post-verdict motion by the Government to detain a defendant, the Court must look to 18 U.S.C. § 3143(a), which provides that a federal district court

> *shall* order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence * * * be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c).

18 U.S.C. § 3143(a)(1) (emphasis added). The statute therefore imposes a presumption in favor of detention. *See, e.g.*, *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004). Indeed, the defendant bears the burden of rebutting this presumption by coming forward with clear and convincing evidence that he or she is not a flight risk and does not present a danger to any person or community. *Id.* (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 26 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3290 ("The Committee intends that in overcoming the presumption in favor of detention [in § 3143(a)], the burden of proof rests with the defendant."). While 18 U.S.C. § 3142

6

governs pretrial release as opposed to release after conviction pending sentencing, the Court may also look to factors iterated in 18 U.S.C. § 3142(g) to determine whether a defendant subject to 18 U.S.C. § 3143 is not likely to flee and/or pose a danger to the safety of any other person or the community. *See United States v. Vance*, 851 F.2d 166, 169-70 (6th Cir. 1988); *United States v. Majors*, 932 F. Supp. 853, 855 (E.D. Tex. 1996). These factors include the nature and circumstances of the offenses charged, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

Upon an examination of the relevant considerations set out in 18 U.S.C. §§ 3143(a) and 3142(g), and the eight arguments put forward in Defendant's motion, the Court concludes that Defendant has failed to overcome the presumption in favor of detention and establish by clear and convincing evidence that she is neither a danger to the economic safety of the community nor a flight risk. Importantly, none of the eight rationales proffered in Defendant's motion – whether taken individually or under a "totality of factors" approach favored by Defendant – justifies releasing Defendant pending sentencing.

First, Defendant notes that she "is 45 years old has no prior convictions." *See* Def.'s Mot. to Set Bond Conditions at 3. While it is true that, prior to her twenty count conviction on March 31, 2006, Defendant had no prior criminal convictions, 18 U.S.C. § 3142(g) directs that courts are to look outside of criminal convictions alone; rather, courts must consider both (1) the nature and circumstances of the offense(s) charged, and (2) the defendant's history and characteristics. *See* 18 U.S.C. § 3142(g)(1) & (g)(3). Here, Defendant was charged with and convicted of twenty felonies involving extensive fraud at three companies over a five-year period stretching from 1998 to 2003. These felonies involved Defendant's use of falsified résumés to gain positions of trust at these

7

companies so that she could access their finances and fraudulently transfer over $70,000.00 in

corporate funds into her own personal bank accounts.  In addition to Defendant's lengthy period of

fraudulent deception and theft for her own benefit, Defendant perpetrated her fraud against

Generations United even after having been arrested on November 24, 2001 on a warrant based on

her thefts from the D.C. Center for Independent Living – a fact that shows that even following an

encounter with law enforcement and possible legal consequences for her fraudulent behavior,

Defendant could not be deterred from attempting to obtain ill-gotten gains through her previous

*modus operandi.  See United States v. Hollender*, 162 F. Supp. 2d 261, 266 (S.D.N.Y. 2001)

("[T]he fact that [defendant] is alleged to have been deeply implicated in crimes the nature and

consequences of which involve deception; that those deceptions are alleged to have included the use

of false and fictitious identities, both individual and corporate; and that sophisticated supporting

documentation manufactured to assist in the use of those identities appears [sic] was seized . . .

strongly support a finding that there was no condition or set of conditions that would reasonably

assure defendant's appearance.").

   Second, Defendant asserts that she "has complied with her conditions of release for the

nearly twenty months" that her case was pending.  *See* Def.'s Mot. to Set Bond Conditions at 3.  A

review of the record undermines Defendant's claim.  While Defendant was certainly left out in the

community on her own recognizance and remained in contact with the Pretrial Services Agency as

required, the four résumés provided by the Government that were submitted by Defendant to

potential employers *after* the relevant period of criminal conduct in this case – i.e., the three résumés

provided to WNS in 2004 and the one Monster.com résumé relied upon by Z-Tech as recently as

November 2005 – all contain glaring inaccuracies and material misstatements.  These inaccuracies,

misstatements, and deceptions include Defendant's claim that she was enrolled in the Columbus

School of Law at Catholic University, her "padding" of her duties with the D.C. Center for

Independent Living, and her omission of certain previous employers in order to avoid negative

disclosures to potential future employers – including her failure to list Utility Construction

Company and Generations United, both of whom she has been convicted of defrauding.  While there

is no evidence at this time that Defendant actually defrauded her post-2003 employers by gaining

access to their finances, strong evidence certainly suggests that Defendant continued her pattern of

résumé deception through the end of 2005, despite facing serious criminal charges for related

behavior.  This deception of potential employers is even more glaring considering the representations

of Ms. Twamley, the Human Resources Manager at Defendant's most recent employer, Z-Tech.

According to Ms. Twamley, Defendant (1) neglected to inform the company that she faced

significant criminal charges; (2) lied to protect her reputation with the company by claiming that she

would have to miss one week of work due to "jury duty"; and (3) never informed the company of

her status post-trial.  This pattern of established, unrefuted behavior certainly strikes at Defendant's

claim that she "has complied with her conditions of release," and forces the Court to question her

personal characteristics, such as her capacity for honesty, her respect for the law, and her ability to

be cabined by legal consequences.

    Third, Defendant emphasizes that she has appeared for all prior court appearances and even

appeared for trial despite being advised "that she was likely to be convicted."  Def.'s Mot. to Set

Bond Conditions at 3.  While the Court certainly appreciates Defendant's regular attendance for

court dates, the Government's case against Defendant was very strong, supported by a myriad of

bank records and checks entered as exhibits, as well as the testimony from several of Defendant's

former employers, that suggested a clear connection between Defendant and the crimes charged.

*See* 18 U.S.C. § 3142(g)(2) (noting that courts should look to the weight of the evidence when

considering release from detention).  Having now been convicted of so many serious felonies, there

is real doubt whether Defendant would re-appear for sentencing, especially given her own

representation that "she has no friends or family" within the District of Columbia area, other than an

uncle in poor health, that would tie her to the community.  *See* Pl.'s Mot. to Set Bond Conditions at

4 (noting that Defendant "has no friends or family to help her if she is not released," and informing

the Court that her "mother, father, and only brother are deceased").

      Fourth, Defendant attempts to minimize her post-2003 conduct by suggesting that the

Government found "discrepancies" on only two résumés and apparently found no other misconduct

on her part since 2003.  *See* Def.'s Mot. to Set Bond Conditions at 3.  Once again, the record

actually indicates far more than mere discrepancies or puffery in Defendant's post-2003 résumés.

For instance, on at least four separate post-2003 résumés, Defendant represented that she was a

student currently enrolled in the Columbus School of Law at Catholic University – a significant,

highly material misrepresentation.  Moreover, on many of these résumés, Defendant represented that

she had graduated from UMUC in May 2004 following the award of a Masters Degree in

International Management – a statement which is clearly false given her present representation that

she completed the coursework for this degree in December 2005 and her current request for bond so

that she can attend the May 13, 2006 graduation.  Finally, on many of these résumés, Defendant

constructed her employment history in a fraudulent or deceptive way, leaving out previous

employers (some of whom she had defrauded), exaggerating her responsibilities, and deliberately

confusing the chronology of her employment in order to increase her attractiveness to potential

employers.  Such fraudulent efforts paid off for Defendant, who was able to obtain employment with

both WNS and Z-Tech through evasion, exaggeration, and outright falsehoods on her résumé(s).

While there is no evidence at the moment that Defendant defrauded these companies in other ways,

the record is clear that Defendant continued a course of fraudulent conduct even after the 1998-2003

time period at issue in her criminal trial that is far from the "minimal" conduct described in her

motion.

Fifth, Defendant avers that  she is willing to forgo employment pending sentencing to allay

any concerns that she may repeat her fraudulent course of conduct while awaiting sentencing.  *See*

Def.'s Mot. to Set Bond Conditions at 4.  While such a promise is certainly commendable, (1) it

does not make up for Defendant's long history of criminal and fraudulent behavior, nor (2) does it

obviate the danger Defendant poses to a person or the community, or the risk of flight, as described

*supra* and in the Court's March 31, 2006 detention determination.  Once again, the offenses for

which Defendant was convicted were significant and occurred over a period of many years,

indicating that Defendant's history and characteristics are not particularly trustworthy.

Sixth, Defendant essentially throws herself upon the mercy of the Court, noting that she should be released from pre-sentencing detention because she needs to put her affairs in order and has no one else to help her. *Id.* While the Court sympathizes with Defendant's plight, several factors mitigate the power of her argument. For instance, Defendant notes that she does have an uncle living in the District of Columbia; while he is described as being "in poor health," it is possible that he could assist Defendant in settling her personal affairs. *Id.* Moreover, Defendant was indicted back on August 31, 2004. For over one and a half years, Defendant has been aware that she faced possible incarceration and/or detention for the multiple offenses charged. Indeed, according to her own motion, "she had been fully advised by counsel that she was likely to be convicted, and that she could be incarcerated if convicted at trial." *Id.* at 3. Given the significant delay that this case experienced in coming to trial, due to Defendant's request for multiple continuances, Defendant certainly had more than enough time to prepare her affairs in light of possible, likely incarceration.

Seventh, Defendant requests that she be released on bond by the Court so that she may attend graduation ceremonies for a Master Degree that she is eligible to receive from UMUC on May 13, 2006. *Id.* at 4. While initially disputed by the Government, *see* Gov't's Opp'n at 7 & n.4, the Court is convinced by the representations of Defendant's counsel that Defendant did complete her degree requirements at UMUC on December 30, 2005, and is eligible to participate in the May 13, 2006 graduation ceremony, *see* Pl.'s Reply at 1-2. The Court also does not necessarily agree with the Government's claim that "it would not be fair to the non-felonious graduates of the University . . . to have to share a special day with someone like the defendant, a person who makes a mockery of educational achievement by using alleged degrees like thieves use burglary tools." Gov't's Opp'n at 7. However, while the Court certainly commends Defendant for her legitimate, hard-earned educational achievements, the fact of the matter remains that participation in a graduation

12

ceremony during which graduates are publicly recognized for the degrees that they have already

earned is not a right – it is a privilege.  Defendant, through the course of her five-year-long criminal

conduct and her subsequent, continuing pattern of deceit and misrepresentation, forfeited the

opportunity to take part in such a non-mandatory ceremony.  Simply, while the Court understands

Defendant's sincere desire to be present, the persuasiveness of her request is outweighed by the clear

flight risk posed by Defendant and the danger to the economic health of the community posed by

Defendant.

Eighth, and finally, Defendant requests release pending sentencing because she has been

unable to have visits with her therapist since being incarcerated.  *See* Def.'s Mot. to Set Bond

Conditions at 5.  A review of Defendant's psychiatric history, to the extent that the Court has been

provided with such information, does show that her mental health is certainly an area of concern that

should be carefully monitored.  However, according to the records before the Court, Defendant is

not currently – and has not recently been – taking psychotropic medication.  As such, her post-

conviction detention has not affected her access to any medication regimen.  Moreover, the

correctional facility in which Defendant is currently detained does offer some mental health services.

Counsel for Defendant should check with Defendant's facility to make sure that she was given an

appropriate mental health screening upon her detention, and the correctional authority can – and

should – monitor Defendant for any mental health needs.  Defendant's counsel should coordinate

any mental health efforts or needs through the mental health service program provided at the jail or

by contacting the corrections facility's legal counsel directly.  Importantly, Defendant's counsel

should also immediately contact this Court if he encounters any difficulties with respect to the

screening and/or monitoring of Defendant.  The Court is acutely sensitive to mental health issues

and Defendant's previous history, and does not desire to interfere with her access to mental health

treatment.  However, the safest method of securing treatment for Defendant while protecting both herself and the community is not to release her, but to instead carefully screen and monitor her while ensuring that she may receive appropriate treatment from the professionals at the jail or make reasonable and appropriate accommodations for her therapist when necessary if allowed by correctional authorities.

Ultimately, upon a consideration of the factors set forth in both 18 U.S.C. § 3143(a) and § 3142(g), the Court concludes that Defendant has not established, by clear and convincing evidence, that she is not likely to flee or pose a danger to either herself or the community upon a release pending sentencing.  Rather, given the serious nature of the twenty counts for which Defendant was convicted, which represented offenses arising out of a course of fraudulent, deceptive criminal conduct stretching over five years, it is clear that Defendant is not particularly trustworthy. Moreover, with respect to the time subsequent to Defendant's charged criminal conduct, i.e., after 2003, the record is clear that Defendant continued her pattern of fraudulent, deceptive behavior up to the date of trial by falsifying her employment and education history and lying to her employer regarding the commencement of her criminal trial.  The evidence against Defendant was extensive, as the jury was presented with voluminous records, a clear paper trail, and consistent testimony linking Defendant to the crimes charged.  Finally, given the history and makeup of Defendant, it is clear that (1) she is a danger to flee, especially given her lack of familial ties to the District of Columbia area, and (2) she is a danger to the economic safety of the community, given her history of financial fraud and deceptive behavior.  As such, for the reasons set forth in this Memorandum and in the oral hearing held by the Court following Defendant's conviction on March 31, 2006, the Court shall deny Defendant's Motion to Set Bond Conditions.  Given the clear and convincing evidence weighing against release in this instance, the Court shall also deny Defendant's Request for

a Hearing on this issue.

### III: CONCLUSION

For the reasons set forth above, the Court shall deny both Defendant's Motion to Set Bond Conditions and Defendant's Request for a Hearing Regarding the Bond Motion.  An appropriate Order accompanies this Memorandum Opinion.


Date:   May 12, 2006

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge